IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA MELENDEZ and MAYRA HERNANDEZ, on behalf of themselves and other Plaintiffs similarly situated, | ) ) ) | Case No. 18- CV 02838 |
| | ) | Judge Matthew Kennelly |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SAINT ANTHONY HOSPITAL, | ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR STEP ONE NOTICE PURSUANT TO THE FAIR LABOR
STANDARDS ACT**

**I.   INTRODUCTION**

Plaintiffs Maria Melendez and Mayra Hernandez and Opt–in Plaintiffs (herein collectively "Plaintiffs"), all of whom were hourly and non-exempt employees, worked for Defendant Saint Anthony Hospital (herein "Defendant") at its 2875 W. 19th Street, Chicago location in the Defendant's Patient Access Department. Plaintiffs claim that they were subjected to a common and illegal plan, policy, or practice: that Defendant knowingly only paid hourly employees for the time they were scheduled to work and denied them pay for work they performed when they were clocked out or that exceeded their scheduled shift and for work they performed during their unpaid lunch breaks. Plaintiffs claim this plan and practice violates the FLSA.

As demonstrated below, Plaintiffs satisfy the modest burden to identify a common plan, policy, or practice alleged to violate the FLSA. This Court should grant Plaintiffs' motion to send notice of this lawsuit to other hourly non-exempt employees who worked in the Defendant's Patient Access Department in the prior three years.

1

## II. Factual Background

On behalf of themselves and all other similarly situated past and present hourly non-exempt employees of the Defendant who were employed in the Patient Access Department, Plaintiffs have filed these claims for unpaid wages and overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S. C. #201 et seq. ("FLSA"), the Portal to Portal Act, 29 U.S. C. 251 et seq., and the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq. ("IMWL"). Two other former employees of the Defendant, Genoveva Moreno and Karina Zuniga, have subsequently filed a Consent to become a party plaintiff under the FLSA in this action. Plaintiffs have filed the attached four Declarations of Melendez, Hernandez, Moreno, and Zuniga in support.

Attached is Melendez's Declaration in which she states that: (1) she was employed by the Defendant between April 16, 2001 and October 27, 2017 performing admitting and registration job duties in the Patient Access Department (para. 1 and 2); (2) she was paid on an hourly basis and not exempt from the overtime requirements of the FLSA, and, as a part of her job duties, interviewed patients to obtain information, verified insurance eligibility, and registered patients (para. 2); (3) the Defendant had a very active Emergency Room with both walk-ins and ambulances bringing in patients, the Defendant frequently understaffed the admissions and registration staff scheduled to work, on many occasions the number of patients asking to be registered and admitted was so high that she and other hourly employees were unable to take their lunch, that she and other hourly employees were encouraged by the Defendant and their managers to work through their lunch breaks, the lunch breaks for her and other hourly employees were regularly interrupted by patients, the Defendant and its managers knew that her lunch breaks and those of other hourly employees were regularly interrupted by patients, to register the patients coming into the Defendant she and other hourly employees

worked through their lunch, and she and other hourly employees were not paid for the time they worked through their lunch breaks or credited with that work time for purposes of calculating and paying them overtime (para. 5-9); and she sent emails complaining about her inability, as well as those of others, to take their lunch. See Para. 7-9, and Exhibits B and C.

Melendez's Declaration also describes Defendant's practice by Susan Tavrides, Defendant's Manager of Patient Access, to require her and other hourly employees to clock out and then continue working off the clock. See para. 10-13. For example, although Tavrides said that it was impossible for two workers to staff a shift, Tavrides only assigned two workers to shifts. See para. 15-16. Defendant used a system of blocking Melendez and other hourly workers from reporting that they worked through lunch. Para. 18-22.

Hernandez's Declaration, pars. 1-7 likewise describes Defendant's practice to have she and other hourly employees regularly work through their lunch breaks and after clocking out, she and others regularly worked additional time and were not properly paid either the wages or the overtime for the extra time she worked. She also states that the Defendant and its managers, including its CEO Guy Megdalia, were aware that Hernandez and other hourly employees regularly worked through their lunch breaks and after clocking out, but refused to pay them overtime.

A third declaration from Genoveva Moreno states that she was an hourly, non-exempt worker in the Patient Access Department between November 2016 and March 2018, that Defendant frequently understaffed the registration staff scheduled to work and on many occasions she and other hourly employees were unable to take their lunches and that their lunch breaks were interrupted, that she and other hourly co-workers were required to work through their lunch, that her managers were aware that she and others were working through their

lunches, that Defendant had a policy blocking workers from reporting that they worked through their lunches, that she and other hourly employees on multiple occasions worked more than forty hours in a single work week either by working through lunch or clocking out at their assigned clock out time and then continuing to work additional time after their scheduled clock out time, that Defendant and Susan Tavrides, the Manager of Patient Access, were aware that she and other hourly employees were working more than forty hours during the work week but were not being paid overtime for the hours they worked, that Tavrides told her that she should clock out and then go back to work and continue working off the clock to finish her work, and that on multiple occasions Tavrides saw her working after she had clocked out. Paras. 1-19. Moreno's Declaration also states that she saw Melendez, due to the volume of work, rarely taking her lunch. par. 19.

A declaration from another hourly worker, Karina Zuniga, contains substantially the same statements, including that Tavrides, the Manager, implemented a policy blocking employees from reporting that they worked through their lunches (para. 5), and that Tavrides told her that even after she clocked out of work that she needed to stay and do all the work finishing up any emails or paper work that need to be scanned because if she did not stay and complete her work she would be in trouble. Para. 8. Zuniga's Declaration also states that Tavrides, because she was present and saw them working after they had clocked out, knew that she and other hourly employees like Mayra Hernandez had clocked out and were continuing working after they had clocked out. Para. 9.

These four declarations state basically the same facts – that is, hourly workers worked during their lunch breaks to meet Defendant's expectations in terms of registering patients, after their shifts ended and they clocked out, they continued to work, including scanning and filing

4

documents and obtaining patient signatures, Defendant was aware that they and similarly situated workers performed unpaid work during their lunch breaks and after clocking out, and Defendant's managers and supervisors were aware that Defendant's workers were performing off-the-clock work and working through lunch breaks for which they were not being compensated.

### III.     Legal Standard

Plaintiffs now seek conditional certification of this collective action for violations of the FLSA's overtime compensation requirements.  Plaintiffs seek to conditionally certify and send notice to all hourly employees who worked for Defendant in the Patient Access Department within the last three years.  The FLSA expressly provides for representative actions.  See 29 U.S.C. #216(b) ("an action to recover (overtime wages) may be maintained against an employer . . . by one or more employees for and on behalf or himself or themselves and other employees similarly situated").  In Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165 (1989), the Supreme Court held that the purpose of the collective action under the FLSA is to allow "plaintiffs  the advantage of lower individual costs to vindicate rights by the pooling of resources" while benefiting the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity." Id. at 169-170.

Motions for step-one notice have a "low standard of proof." Briggs v. PNC Financial Services Group, Inc., No. 15-cv-10447, 2016 WL 1043429, at *1 (N. D. Ill. Mar. 16, 2016). Courts in the Northern District of Illinois apply a two-step approach to determine if a collective action should proceed. Briggs, 2016 WL 1043429 at *1; Sylvester v. Wintrust Fin. Corp., No. 12 C 01899, 2013 WL 5433593, at *2 (N. D. Ill. Sept. 30, 2013).  This "first step requir(es) 'a minimal showing that others in the potential class are similarly situated.'"   Briggs, 2016 WL

104349 at *2; Sylvester, 2013 WL 5433593 at *2; Heckler v. DK Funding, LLC, 502 F. Supp. 2d 777, 781 (N. D. Ill. 2007); Garcia v. Salamanca Grp., Ltd., No. 07 C 4665, 2008 WL 818632, at *2 (N. D. Ill. Mar. 24, 2008) (collecting cases).

Because, pursuant to 29 U.S.C. #256(b), an action is not considered to be commenced "in the case of any individual claimant . . . (until) the subsequent date on which such written consent is filed in the court in which the action was commenced," it is imperative that notice be sent to putative class members at an early stage in order to toll the statute of limitations for the putative collective action members. At the first step, a "named plaintiff can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Anyere v. Wells Fargo, Co., No. 09-C-2769, 2010 WL 1542180, *1 (N. D. Ill. April 12, 2010); Nunes v. Chicago Import, Inc., No. 09-C- 7168, 2010 WL 1197538, *2 (N. D. Ill. March 22, 2010); Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1041, 1045 (N. D. Ill. 2003). "Courts use a 'lenient interpretation' of the term 'similarly situated' in determining whether a plaintiff meets this burden. Flores, 289 F. Supp. 2d at 1045. It is not proper at the first stage for the court to make a determination on the merits or judge the credibility of each parties' declarants. Anyere, 2010 WL 1542180 at *3.

If the plaintiff makes this requisite 'modest factual showing,' the Court may allow notice of the case to be sent to the similarly situated employees, who then have the opportunity to opt in as plaintiffs. See Heckler, 502 F. Supp. 2d at 779. Plaintiffs need only make a modest showing, typically consisting of the Complaint's allegations and a small number of affidavits. Jonites v. Exelon Corp., No. 05-C-4234, 2006 WL 2873198, *2 (N. D. Ill. October 4, 2006).

If a court finds the lenient notice-stage test is met, the court conditionally certifies the case as a collective action and orders dissemination of notice to potential class members, allowing them an opportunity to affirmatively opt in by filing a written consent. As stated in Briggs, 2016 WL 1043429, at *2, at this stage "(t)he court does not make merits determination, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." Only at step two, after the opt-in period closes and discovery is completed, does the court apply a more stringent standard and, if prompted by a motion for decertification by the defendant, the court may take a second-stage determination based on a more fully developed factual record concerning whether the lawsuit should remain certified for trial. See Sylvester, 2013 WL 5433593, at *3; Heckler, 502 F. Supp. 2d at 779.

**IV.  Argument**

**A. Conditional Certification and Notice Is Warranted Because Hourly, Non-Exempt Employees Are Similarly Situated**

Plaintiffs' motion should be granted because they have made the necessary "modest factual showing" that all of Defendant's hourly employees in the Patient Access Department are similarly situated for purposes of the FLSA in that they performed similar job duties and were subject to the same common policy or plan by Defendant that denied them pay for pay and overtime for post-shiftwork and work performed during their lunch breaks. Defendant's common policy is confirmed by Defendant's Answer which was filed on July 19, 2018. Defendant's Answer, par. 10, states: "Defendant had a common policy and practice regarding the payment of wages and overtime wages for all of its hourly employees." Defendant's Answer, para. 8, also states: "Defendant admits that there exist past and present employees who, like the named Plaintiffs, were paid on an hourly basis" and "performed the same or similar job duties."

Plaintiffs have supported their claims with declarations from four former workers and who have testified regarding their personal knowledge of Defendant's plan, policies, and practices. Those declarations demonstrate what Defendant's plan, policy, and practice was, and that Defendant's managers and supervisors were aware that Defendant's hourly employees were performing off the clock work and working through their lunch breaks for which they were not compensated. The Defendant's common plan, policy, and practice of failing to fully compensate hourly employees for overtime hours lies at the heart of this case.

This evidence satisfies Plaintiffs' modest step one FLSA factual burden. As stated in Jirak v. Abbott Labs, Inc., 566 Supp. 2d 845, 848-849 (N. D. Ill. 2008), "Plaintiffs do not have to show that the potential class members have identical positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions or pay." See also Perry v. Nat'l City Mortg., Inc., No. 05-cv- 891-DRH, 2007 WL 1810472, at *3-4 (S. D. Ill. June 21, 2007); Jones v. Furniture Bargains, LLC, No. 09-C-1070, 2009 WL 3260004, *4 (N. D. Ill. Oct. 9, 2009).

The primary responsibilities of all these opt-in class individuals was registering patients. Any further arguments about dissimilarities are "more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery." Jirak, 2008 WL 2822553, at *4.

Insofar as Defendant might argue that if Plaintiffs and others had performed work after their shifts or during breaks they could have filled out overtime slips or requests and would have been paid if they had done so, as this court stated in Russell v. Illinois Bell Telephone Co., No. 08-C-1871 (N. D. Ill. Sept. 15, 2008), "the mere fact that a company has a written overtime policy does not defeat conditional certification when a plaintiff provides countervailing evidence

8

of a common policy of not paying for overtime. See <u>Burch v. Quest Comms. Intern., Inc</u>., 500 Supp. 2d 1181, 1188 (D. Minn. 2007). In any event, determination of the merits of the case is premature."

### B. Plaintiffs' Proposed Notice Is The Best Notice Practicable

As stated in <u>Sylvester</u>, 2013 WL 5433593, at *6, courts in this judicial district have concluded that "(a)bsent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." "The only thing that matters to the Court is that the notice of lawsuit and consent form convey accurately and fairly all the necessary information at this stage." <u>Id</u>.

Plaintiffs propose a straightforward form of notice, which will inform the prospective opt-in employees of their statutory opt-in rights. See Proposed Order, Exh. 5. The proposed notice explains the nature of the lawsuit and identifies Plaintiffs' allegations. It is accurate, simple to understand, and conveys the requisite information necessary at this stage. It states that the Court has not adjudicated the merits of the dispute. The notice also correctly summarizes the potential class members' options. It states that individuals are free to select their own counsel. It also states that individuals who opt in will be bound by the resulting judgment, whether favorable or unfavorable. The notice is to be accompanied by a consent form to join. See Proposed Order, Exh. 5.

Plaintiffs seek to send the notice and consent forms via regular United States mail, email and text message. Plaintiffs also request that the Defendant produce social security numbers and birth dates (for those notices returned undeliverable). Plaintiffs further request to send a reminder mailing to all potential opt-in plaintiffs half-way through the notice period. Courts have regularly authorized distribution of notice through these methods. See <u>Watson v. Jimmy

9

Jon's LLC, 15-cv-6010, 2016 WL 106333, at *1 (N. D. Ill. Jan. 5, 2015) ("communication through email is the norm" and "allowing email notice will facilitate, rather than complicate, the notice process"); Espenscheid v. DirectStat USA, LLC, No. 09-cv-625, 2010 (WL 2330309, at *13-15 (W. D. Wis. June 7, 2010) (approving email notice); Soto v. Wings 'R US Romeoville, Inc., No. 15-CV-10127, 2016 WL 4701444, at *9 (N. D. Ill. Sept. 8, 2016) (approving a reminder notice). See also Irvine v. Destination Wild Dunes Mgmt., Inc., 132 F. Supp. 2d 707, 710 (D. S. C. 2015) (approving "direct mail, email and text messages" as "eminently reasonable to the Court"); Dempsey v. Jason's Premier Pumping Services, LLC, No. 1:15-CV-703, 2015 WL 13121134, at *2 (D. Colo. Nov. 11, 2015) (approving text message notice).

On June 25, 2018, Plaintiffs sent Defendant's counsel a proposed Agreed Motion to Begin Notice to Members of the Plaintiffs' Class. On July 13, 2018 Plaintiffs sent Defendant's counsel a copy of a proposed Notice and Consent forms for Defendant's review and input and requested that the Defendant agree to send the notice to the putative opt-in class members without having to brief the issue before the Court. To facilitate sending the notice, Plaintiffs also requested the names, last known addresses, email addresses, and telephone numbers of current and former employees dating back three years. Aside from Defendant sending a June 27th letter acknowledging its receipt of Plaintiffs' June 25th proposal and saying it was not "specific enough," the Plaintiffs have not received any further written response from Defendant regarding Plaintiffs' two earlier letters.

**V.     Conclusion**

For the above-stated reasons, because conditional certification would allow the efficient resolution of the issues of fact and law and serve the interests of judicial economy by limiting the

proliferation of multiple lawsuits, and because Plaintiffs satisfied their modest factual burden, this Court should grant their Motion for Step-One Notice Pursuant to the FLSA.

Dated: July 25, 2018.

Respectfully submitted,

/s/ Marty Denis
Marty Denis
Barlow, Kobata & Denis, LLP
525 W. Monroe Street, Suite 2360
Chicago, Illinois 60661
Phone: 312-648-5570
mdenis@bkd-law.com
Attorneys for Plaintiffs

11

## **CERTIFICATE OF SERVICE**

I, Marty Denis, Attorney at Law hereby certify that I caused to be served via e-filing a copy of the aforementioned document on the following parties:

>Rob Entin
>Polsinelli PC
>150 N. Riverside Plaza, Suite 3000
>Chicago, Illinois 60606
>rentin@polsinelli.com
>
>Mary Kathryn Curry
>Polsinelli PC
>150 N. Riverside Plaza, Suite 3000
>Chicago, Illinois 60606
>mkcurry@polsinelli.com

this **25th** day of **July, 2018.**

>/s/ Marty Denis
>Marty Denis
>Attorney for Plaintiffs

Marty Denis
Barlow, Kobata & Denis, LLP
525 W. Monroe Street, Suite 2360
Chicago, Illinois 60661
Phone: 312-648-5570
mdenis@bkd-law.com
Attorneys for Plaintiffs