IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA MELENDEZ and MAYRA HERNANDEZ, on behalf of themselves and other Plaintiffs similarly situated, ) ) ) ) | |
| Plaintiffs, ) | Case No. 1:18-cv-2838 |
| v. ) ) | Judge Mathew Kennelly |
| SAINT ANTHONY HOSPITAL, ) ) | Magistrate Judge Sheila M. Finnegan |
| Defendant. ) | |

**JOINT MOTION TO APPROVE FLSA SETTLEMENT AGREEMENT**

Plaintiffs Maria Melendez, Mayra Hernandez, Gina Moreno, and Karina Zuniga (hereinafter the "Plaintiffs") and Defendant Saint Anthony Hospital ("SAH") by and through their undersigned counsel, respectfully move for the entry of an Agreed Order to Approve FLSA Settlement Agreement. In support, the Parties state the following:

**Factual and Procedural Background**

1. On April 20, 2018, Maria Melendez and Mayra Hernandez filed a Complaint in this action against SAH, alleging claims for unpaid wages and other relief pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Portal to Portal Act 29 U.S.C. § 251 *et seq.,* the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 735 ILCS 5/2-801 *et seq.* ("ILPCA"). In addition, Plaintiff Maria Melendez also alleges a promotional denial, retaliation, and constructive discharge under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*., (the "ADA"), the Family Medical Leave Act, 29 U.S.C. §2601 *et seq.,* (the "FMLA") and the Age Discrimination and Employment Act, 29 U.S.C. §621 *et seq.* (the "ADEA"). On April 20, 2018, Gina Moreno filed her consent to

1

become a Party Plaintiff and on June 18, 2018, Karina Zuniga filed her consent to become a Party Plaintiff. (Dkts. 3 and 9).

2. Plaintiffs (both named and opt-in) were employed by SAH at various times in the Patient Access Department. At its essence, the Complaint alleges that SAH required Plaintiffs to work through their lunch breaks and after clocking out during various times in the workweek.

3. Under Section 216(b) of the FLSA, employees may bring a collective action on behalf of themselves and other "similarly situated" employees against employers who allegedly violate the overtime provisions of the FLSA. 29 U.S.C. §216(b).

4. The Seventh Circuit has not addressed how a district court should manage collective actions, but "the majority of courts … have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Jirak v. Abbott Labs., Inc.,* 566 F. Supp. 2d 845 (N.D. Ill. 2008).

5. Under this approach, the court typically makes – as a first step – an initial "notice stage" determination whether plaintiffs are "similarly situated." If the plaintiffs carry their burden, the matter is conditionally certified and notice is sent to potential class members giving members an opportunity to opt-in. *Id.*

6. The second step in the two-step method typically occurs at the conclusion of discovery, usually prompted by a motion to decertify. The court makes a second collective action determination, but uses a much stricter standard of "similarly situated." *Id.*

7. Due to the minimal showing required at the first step, the "lenient interpretation" courts use when addressing whether class members are "similarly situated," and the cost associated with opposing Plaintiffs' motion, SAH agreed to step-one notice. *See id.* Therefore,

this action was conditionally certified as a collective action by agreement of the parties and with the Court's approval on August 29, 2018, pursuant to 29 U.S.C. §216(b). (Dkt. 22).

8. On the same day following the hearing on conditional certification, Plaintiffs' counsel proposed to counsel for SAH that the case be tolled immediately to pursue settlement.

9. Before notice was sent to putative class members, the parties entered into an agreed Tolling Agreement up to and including January 12, 2019. During that time the parties agreed to request a settlement conference before Magistrate Judge Finnegan. They further agreed that any future opt-in plaintiffs did not waive or forfeit their right to file consents.

10. On December 6, 2018, Magistrate Judge Finnegan conducted a settlement conference with Plaintiffs' Counsel, the Plaintiffs, and SAH's General Counsel present. The Parties discussed the allegations in the Complaint and based on Judge Finnegan's evaluation and the agreement of the Parties, the Judge proposed a "settlement recommendation" to settle all claims of the four (4) individual plaintiffs.

11. On December 19, 2018, the Parties reached a settlement for the two named Plaintiffs and two opt-in Plaintiffs, based on Judge Finnegan's recommendation and the terms outlined therein, and premised on a joint motion by the Parties to decertify the class.

**Settlement Summary**

12. The Parties recognize and acknowledge the burden, expense, and litigation risks of continuing to litigate this matter. Therefore, they have reached an agreement regarding Plaintiffs' claims, which is a reasonable compromise of the FLSA claims, as well as a reasonable compromise of the individual statutory ADA, FMLA, and ADEA claims of Plaintiff Melendez. This Agreement completely resolves the claims of the two named Plaintiffs and the two opt-in Plaintiffs.

13. The Parties' Agreement includes: (a) two separate settlement payments to Plaintiff Melendez, one related to her FLSA claims and one related to her other statutory ADA, FMLA, and ADEA claims; (b) a settlement payment to Named Plaintiff Hernandez; (c) settlement payments to the two opt-in Plaintiffs, Gina Moreno and Karina Zuniga; and (d) a payment of attorney's fees and costs to Plaintiffs' attorney.

14. The Parties represent that this settlement reflects a reasonable compromise of a bona fide dispute over Plaintiffs' claims and was negotiated at "arms length" and with the advice of counsel. The Parties recognize that Court approval is necessary to effectuate a valid and enforceable release of FLSA claims.

## Legal Standards

15. The issue for the Court is whether the parties' FLSA Settlement Agreement is a fair and reasonable compromise of a bona fide dispute, warranting the Court's approval, and whether the award of attorneys' fees and expenses is warranted.

16. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Koszyk v. Country Fin. a/k/a CC Services, Inc.*, 16 CIV. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016)(citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).

17. Where settlements are reached through the assistance of a mediator or a Judge, courts generally recognize that the settlement negotiation process was conducted at arms-length and meets the standard for approval. *See, e.g., Castillo v. Noodles & Co.*, 16-CV-03036, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016).

18. If the settlement is a reflection of a "reasonable compromise" of the contested issues, the court should approve the settlement. *Koszyk*, 16 CIV. 3571, 2016 WL 5109196, at *1.

19. "'It is a well settled principle that the law generally encourages settlements.'" *Id.* (quoting *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979)).

20. Furthermore, an action brought under the FLSA is not a true class action, as that term is contemplated by the Federal Rules of Civil Procedure. 29 U.S.C. § 216(b). To bind anyone to the result obtained, a §216(b) representative must affirmatively consent to be bound. *See Clougherty v. James Vernor Co.*, 187 F.2d 288 (6th Cir. 1951). The significance of this is that the due process concerns which mandate a high level of judicial scrutiny of class action litigation are not present in FLSA actions, because potential class members who do not opt in are not bound by the case's outcome. *See Maguire v. Trans World Airlines, Inc.,* 55 F.R.D. 48 (S.D.N.Y. 1972); *Wagner v. Loew's Theatres, Inc.,* 76 F.R.D. 23 (M.D.N.C. 1977).

21. This is to say that unlike settlements under Rule 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).

**Argument**

22. This settlement was the product of well-informed, arm's-length negotiations by experienced Counsel on both sides, with the assistance of Judge Finnegan as the mediator. Both Parties performed analysis of damages, pertinent documentation, and the facts and applicable law of the case.

23. SAH has consistently denied that it owes any unpaid wages or overtime compensation to Plaintiffs or any other person, and that it violated the FLSA, the Portal to Portal Act, the IMWL, the ILPCA, or any other law, rule or regulation relating to the payment of

compensation, and maintains that it has at all times properly compensated the Plaintiffs and all other persons.

24. A bona fide dispute, therefore, exists between the Plaintiffs and SAH as to the amount, if any, of overtime owing to the Plaintiffs.

25. The Plaintiffs and SAH have exchanged factual disclosures, conducted extensive discovery including a large document production by SAH, and other information, and such disclosures have enabled each party to understand and assess the detail and substance of their respective claims and defenses.

26. The litigation has been hard fought and settled only after conditional certification, and Plaintiffs obtained hundreds of pages of documents, including time records, personnel records, and e-mails, and ultimately participated in negotiations with the assistance of the Court. Serious questions of fact and law existed that placed the ultimate outcome of the litigation in doubt.

27. Plaintiffs claimed that SAH unlawfully deducted 30 minutes for meal periods when uninterrupted meal breaks were allegedly not received, and failed to pay employees all overtime compensation due. However, SAH has claimed that, among other things, it has complied at all times with the FLSA by properly paying all employees for all hours worked including overtime hours. Therefore, both substantive and procedural disputes created obstacles in the litigation.

28. The conference before Judge Finnegan involved substantial negotiation and was necessary to bridge the gap between the Parties' respective settlement positions, and obtain the resolution described here. At every point in the litigation, the Parties' respective Counsel vigorously defended their clients' position while assessing their respective risks of continuing

6

without settling the dispute. That is, absent a settlement, both Parties faced the prospect of adverse determinations by a fact finder, subjecting each Party to significant risks in the case.

29. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness).

30. In determining whether to approve a settlement as being fair, just and reasonable, the Court must consider whether the proposed settlement was fairly and honestly negotiated; whether serious questions of law and fact exist that place the ultimate outcome of the litigation in doubt; whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, in the judgment of the Parties, that the settlement is fair and reasonable. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

31. The settlement offers significant payments to Plaintiffs and the relief is meaningful, warranting settlement approval. If the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. Or, such recovery may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010)(noting the many factors courts consider, including the expense and duration of litigation, the risks of establishing liability and damages, and the risks of maintaining a class through trial); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation).

32. The proposed settlement brings substantial value to the claims of Plaintiffs. The Settlement reflects the maximum value of the case given the circumstances and the current procedural posture of the claims. For example, given SAH's various defenses, the potential

recovery could ultimately have been substantially less or nothing at all. Consequently, settlement brings a realized value now, as opposed to years from now, and provides a certainty of result and ensures recovery on the part of the Plaintiffs.

33. The Parties submit that the terms set forth in the attached Settlement Agreement are fair, reasonable, and adequate and in the best interest of Plaintiffs, in light of all known facts and circumstances.

34. The individual settlement amounts for each of the two named Plaintiffs and the two opt-in Plaintiffs are a reasonable compromise of their FLSA claims.

35. Plaintiffs and SAH desire to enter into this Agreement, with the approval of the Court, to fully and finally settle, resolve and dismiss with prejudice this dispute.

## Conclusion

36. The Court should approve the Parties' Settlement Agreement to resolve the Plaintiffs' FLSA claims for several reasons. First, this settlement arises out of an action that was adversarial in nature. The Parties vigorously disputed the merits of this case, with Plaintiffs contending that they worked off the clock and SAH disputing Plaintiffs' allegations. Second, the Parties were represented by competent and experienced counsel. Third, this settlement was reached through arm-length negotiations, including settlement discussions supervised by Magistrate Judge Finnegan. Fourth, the Parties entered into the Settlement Agreement in recognition of the risks inherent in litigation including, for example, for Plaintiffs, the risk of no recovery and, for the SAH, the risk of an adverse verdict. Because of these risks, the Settlement Agreement, which provides for a guaranteed payment to the two named Plaintiffs and the two opt-in Plaintiffs, as well as a payment of attorney's fees and costs to their counsel for prosecuting this matter, represents a fair and reasonable compromise of this matter.

**WHEREFORE**, for these reasons, the Parties respectfully request that the Court approve the Confidential Settlement Agreement and Release of Claims, provided to the Court *in camera*, and otherwise grant this Joint Motion for Approval of FLSA Collective Action Settlement and Dismissal with Prejudice by:

    a.    Entering an Order which incorporates by reference the terms set forth in the Joint Motion to Approve FLSA Settlement; and

    b.    Entering an Order which finds that the Parties' Settlement Agreement is fair and reasonable as to Plaintiffs.

Respectfully submitted,

| | |
|---|---|
| By: */s/ Robert E. Entin* | By: */s/ Marty Denis* |
| Robert E. Entin | Marty Denis |
| Mary Kathryn Curry | BARLOW, KOBATA & DENIS, LLP |
| POLSINELLI PC | 525 W Monroe Street, Suite 2360 |
| 150 N. Riverside Plaza, Suite 3000 | Chicago, Illinois 60661 |
| Chicago, Illinois 60606 | Telephone: (312) 648-5570 |
| Telephone: (312) 819-1900 | mdenis@bkd-law.com |
| mkcurry@polsinelli.com | |
| rentin@polsinelli.com | *Counsel for Plaintiffs Maria Melendez and Mayra Hernandez, Gina Moreno, and Karina Zuniga* |
| *Counsel for Defendant* | |
| Dated: January 18, 2019 | Dated: January 18, 2019 |